UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sara Osman,                                     Case No. 16-cv-802

                    Plaintiff

          v.                                    MEMORANDUM OPINION

Grube, Inc., et al.,

                    Defendants

## I.    INTRODUCTION

Before me are: (1) Defendants Grube, Inc. and Scarlet & Gray Enterprises, Ltd.'s partial motion to dismiss (Doc. No. 17); (2) Plaintiff Sara Osman's motion for Step-One Notice (Doc. No. 23); and (3) Plaintiff Sara Osman's motion for equitable tolling.  (Doc. No. 37).

## II.    BACKGROUND

Plaintiff Sara Osman brought this action on behalf of herself and those similarly situated who are or were employed as servers or bartenders at Buffalo Wild Wings ("BWW") franchise locations owned by Defendants Grube, Inc. and Scarlet & Gray Enterprises, Ltd.  (Doc. No. 1).  As a server and bartender paid a tipped wage, she performed tipped and untipped duties.  *Id.*  Some untipped duties included: cleaning bathrooms, slicing fruit, cleaning restaurant floors, washing dishes, sorting through trash for discarded silverware, taking out the trash, maintaining soda machines, dusting, cleaning video games, cleaning high chairs, and rolling silverware.  *Id.* at 6.  Osman alleges that she spent approximately 40 percent of her work time performing these non-tipped tasks while being paid her tipped wage in violation of the Fair Labor Standards Act.  *Id.*

While Osman worked only at the Lima, Ohio location, Defendants' own and operate approximately twenty BWW franchises, located in Ohio, West Virginia, Virginia, South Carolina, and Maryland.  Osman alleges Defendants required servers and bartenders to spend a significant amount of their work time performing the same untipped duties at all of their franchise locations. Therefore, she asserted the suit as a collective action and moved for Step-One Notice.

### III.    MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action").  A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. at 93 (citing *Twombly*,

550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008).

The Court "may consider the Complaint and any exhibits attached thereto, public records, items

appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as

they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l*

*Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

A.      Minimum Wage

The Fair Labor Standards Act requires employers pay covered employees a wage of at least

$7.25 an hour.  29 U.S.C. § 206(a)(1)(C).  But there is an exception for "tipped employees" or "any

employee engaged in an occupation in which he customarily and regularly receives more than $30 a

month in tips."  29 U.S.C. § 203(t).  Employers must pay "tipped employees" a wage of:

> an amount equal to--
> (1) the cash wage paid such employee which for purposes of such determination
> shall be not less than the cash wage required to be paid such an employee on August
> 20, 1996; and
> (2) an additional amount on account of the tips received by such employee which
> amount is equal to the difference between the wage specified in paragraph (1) and
> the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips
> actually received by an employee. The preceding 2 sentences shall not apply with
> respect to any tipped employee unless such employee has been informed by the
> employer of the provisions of this subsection, and all tips received by such employee
> have been retained by the employee, except that this subsection shall not be
> construed to prohibit the pooling of tips among employees who customarily and
> regularly receive tips.

29 U.S.C. § 203(m).  In short, the tipped employee must receive the minimum wage provided by §

206(a)(1).  The employer must pay *at least* $2.13 an hour, the minimum wage of tipped employees on

August 20, 1996.  But, only if the employee's tips average less than $5.12 an hour will the employer

have to supplement the tipped employee's wages to equal the minimum wage.  Tip credit cannot be

taken by an employer unless employees are informed that tip credit will be taken and the employee

retains all tips received, with the exception of pooled tips.  29 U.S.C. § 203(m).

Defendants move to dismiss Plaintiff's FLSA wage claims based on her alleged failure to assert she earned less than minimum wage on any particular workweek. But to succeed on an FLSA claim, she need only "prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). Therefore, contrary to BWW's assertion, Osman's failure to state that she made less than minimum wage on any particular workweek alone is not grounds for dismissal. *See, e.g.*, *Romero*, 849 F.3d at 1286 ("[W]e reject the defendants' argument—and the district court's conclusion—that "if [a] tipped employee makes enough [in tips] to meet the minimum wage," then the employer has necessarily complied with § 206(a).").

B.      Related and Unrelated Duties

Osman asserted that Defendants violated the FLSA by taking tip credit for significant amounts of time she spent performing untipped related and unrelated duties. Though in practice, these allegations produce two separate grounds for relief, at this early stage in the litigation they may not be distinguished. Both stem from the following regulation:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

1.      "Occupation"

BWW first argues that the *occupation* as a whole, rather that the duties performed, governs whether an employee is employed in a dual job. The regulation does not provide a definition for

"occupation," but instead describes the term in relation to the duties performed.  For example, a maintenance man who "*serves* as a waiter" has two occupations.  *Id.*  The regulation does not require an employee to hold two distinct *titles* to be employed in a "dual job." Instead, the employee must work in two distinct *capacities*.  In other words, the "dual job" analysis depends on whether the employee's untipped duties are "related" to the tipped occupation and how often they are performed.

2.      Ambiguity and the Field Operations Handbook

        To properly analyze whether an employee is employed in a dual job, it is essential to know what "related duties" are and how much time is "part of [the] time" or "occasionally."  The failure to define these essential terms makes the regulation ambiguous.  *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877-81 (8th Cir. 2011), *cert. denied Applebee's Int'l, Inc. v. Fast*, 565 U.S. 1156 (2012).  Since the regulation is ambiguous, the court may defer to interpretations of the Department of Labor, who promulgated the dual jobs regulation.  *See Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000) ("But *Auer* deference is warranted only when the language of the regulation is ambiguous."); *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that an agency's interpretation of its own regulation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'")(citations omitted); *Fast*, 638 F.3d at 877-81.

        The DOL has issued three opinion letters regarding the dual jobs regulation, the last of which was withdrawn prior to being sent to the requesting party.  The first stated that "where there is a clear dividing line between the types of duties performed by a tipped employee, such as between maintenance duties and waitress duties, no tip credit may be taken for the time spent by a waitress performing maintenance duties."  U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. WH-502, 1980 WL 141336 (Mar. 28, 1980) (finding that no tip credit would be awarded when "specific employees were routinely assigned, for example, maintenance-type work such as floor vacuuming.").  The next stated, "tip credit could be taken for ...duties are incidental to the wa[i]ter or waitress regular duties

and are assigned generally to the waiter/waitress staff. However, where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a substantial amount of time in performing general preparation work or maintenance, [the DOL] would not approve a tip credit for hours spent in such activities."  U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. FLSA-854, 1985 WL 1259240 (Dec. 20, 1985) (finding no tip credit could be given for the 30-40% of time performing "responsibilities [that] extend to the entire restaurant rather than to the specific area or customers which they serve.").  In 1988, the DOL issued the Field Operations Handbook (FOH)  which reflected the opinion letters and established the standard that no tip credit could be taken if tipped employees spent "a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance."  FOH § 30d00(e) (1988).

Of the four Circuits to analyze the dual jobs regulation, two applied the twenty-percent rule from the FOH.  *See Schaefer v. Walker Bros. Enters., Inc.*, 829 F.3d 551, 554-55 (7th Cir. 2016); *Fast*, 638 F.3d at 877-78, 880-81.  The remaining two circuits did not apply the standard, but cited favorably to *Fast*.  *See Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281, 1284 (10th Cir. 2017) (citing the twenty percent standard and the FOH, but remanding since the issue was not ripe for appeal); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 232 (5th Cir. 2011) (noting the deference given by the *Fast* court to the FOH).  Defendants rely on an affirmation by the Eleventh Circuit to support their argument that the twenty-percent rule should not be applied.  *Pellon v. Bus. Representation Int'l, Inc.*, 528 F.Supp.2d 1306 (S.D. Fla. 2007), *aff'd* 291 F. App'x 310 (11th Cir. 2008).  But, the *Pellon* court did not reject the rule itself, but said that the rule was inapplicable in that case because: (1) "[T]he tasks that allegedly violate the minimum wage are intertwined with direct tip-producing tasks throughout the day" so much so that "several of the plaintiffs themselves have admitted that dividing their workday among the various tasks they perform is impractical or impossible."; (2) "The overwhelming majority of tasks complained of by Plaintiffs in this case do not qualify as general

preparation work or maintenance."; and (3) "Plaintiffs have offered no evidence that their non-skycap duties even constitute more than 20% of the workday."  528 F. Supp. 2d at 1313-14.

Courts have differed in whether the FOH should be granted deference and the twenty-percent rule in it applied, as evidenced by the ability of each side to cite cases supporting their sides. As argued by Defendants, some trial courts have refused to apply the twenty-percent rule because of the alleged "inconsistent application" of it by the Department of Labor.  This inconsistency is based solely on the withdrawn opinion letter that stated: (1) no time limitation was to be placed on "related duties" performed within a "reasonable time immediately before or after performing…direct-service duties"; and (2) a *de minimus* rule could apply to unrelated duties.  U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. FLSA 2009-23 (Jan. 16, 2009), https://www.dol.gov/whd/opinion/FLSA/2009/2009_01_16_23_FLSA.pdf.  The letter stated, "These principles supersede our statements in FOH § 30d00(e). A revised FOH statement will be forthcoming."  *Id.*

But, with the change in administration on January 20, 2009, the letter was withdrawn and the FOH was not revised to reflect it.  The DOL remained silent on the dual jobs regulation until December 2016, when it revised the FOH to read, in part:

> (2) 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.

> (3) However, where the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

> (4) Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation. For example, maintenance work (*e.g.*, cleaning bathrooms and washing windows) are not related to

the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

FOH § 30d00(f) (2016), *available at* https://www.dol.gov/whd/FOH/FOH_Ch30.pdf (last visited June 29, 2017). The new language of the FOH is consistent with the 1980s opinion letters and the previous language of the FOH. The language merely clarifies "related duties" and the time restrictions articulated in the regulation. Because the Department of Labor has consistently interpreted the dual jobs regulation over time including most recently, with the exception of one withdrawn letter, I do not find inconsistent application as grounds to discount the FOH.

While the 2016 revision to the FOH clarifies the issue, it is not binding. The preface to the FOH states:

> The Field Operations Handbook (FOH) is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance. The FOH was developed by the WHD under the general authority to administer laws that the agency is charged with enforcing. The FOH reflects policies established through changes in legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator. *It is not used as a device for establishing interpretative policy.*

U.S. Dep't of Labor, *Field Operations Handbook (FOH)*, https://www.dol.gov/whd/FOH/ (last visited June 28, 2017) (emphasis added). Therefore, the Handbook is not entitled to the deferential weight of an official interpretation. But, since it is meant to guide DOL employees in the investigation and enforcement of the dual jobs regulation, it is persuasive evidence of the DOL's intent and should be considered.

Case law, the DOL opinion letters, and the FOH all support a position the "maintenance" duties not performed within the immediate vicinity and time period of tipped duties are "unrelated" duties for which the employer may not take tip credit. Additionally, these sources also support the assertion that while prepatory and maintenance duties performed within the same vicinity and time period of tipped duties are "related duties," employers may not take tip credit if they consume a "substantial amount of time." Here, Osman performed "maintenance" such as taking out trash,

dusting, and cleaning bathrooms, restaurant floors, and video games. She also performed untipped prepatory activities such as slicing fruit, setting up the soda machine, rolling silverware, and washing dishes. Whether these maintenance and prepatory tasks are considered related or unrelated depends on when and where the duties were performed in relation to the tipped duties. Regardless of the categorization at this time, Osman alleges that she performed these untipped duties 40 percent of her work time, considered by the DOL as a "substantial amount of time" in the 1985 opinion letter. Therefore, both the dual jobs and substantial amount of time claims are supported by the facts of the complaint and Defendants' partial motion to dismiss is denied. (Doc. No. 17).

IV. MOTION FOR STAGE-ONE COLLECTIVE ACTION CERTIFICATION

Osman moved the court for stage-one notice certification under 29 U.S.C. § 216(b). The proposed potential plaintiffs include all servers and bartenders of Defendants' BWW franchise locations. As an attachment to the motion, Osman attached a proposed notice along with the proposed procedure for disbursement. Defendants object to both the conditional certification of the collective action and the language and form of the proposed notice.

A.      Collective Action Conditional Certification

An FLSA plaintiff may sue an employer on behalf of herself and those similarly situated who "opt-in" by filing their written consent to be a party in the court where the action is brought. 29 U.S.C. § 216(b); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). There are two stages of collective action certification, the notice stage and the decertification stage. *Comer*, 454 F.3d at 546. This case currently is in the notice stage, in which the court must determine whether the named plaintiff has established a "colorable basis" for the named plaintiff's assertion that other potential plaintiffs are similarly situated to the named plaintiff. *Peterson v. Cleveland Inst. of Art*, No. 1:08-cv-1217, 2011 WL 1230267, at *2 (N.D. Ohio Mar. 30, 2011) (*citing Comer*, 454 F.3d at 546 and *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005)). Since the notice stage "takes place at the beginning of discovery," this is a "fairly lenient standard," requiring only "a

modest factual showing" that the named and potential plaintiffs are similarly situated.  *Comer*, 454 F.3d at 547; *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004).  A plaintiff may prove she is similarly situated to potential plaintiffs by showing "they suffer from a single, FLSA-violating policy, and [that] proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."  *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009).

At this stage of conditional certification, the court "typically do[es] not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011); *see also Comer*, 454 F.3d at 546 (affirming the district courts order "that merits and damages discovery be postponed until" after initial discovery on collective action certification).  Only after discovery in the second stage of certification does the court "examine more closely the question of whether particular members of the class are, in fact, similarly situated."  *Comer*, 454 F.3d at 547.  Therefore, Defendants' arguments regarding the merits of Osman's claims are immaterial to conditional certification.  Likewise, Defendants' argument regarding individualized inquiries is premature as that is the topic of stage-two decertification.  The only inquiry pertinent at this time is whether Osman has provided sufficient evidence that the potential plaintiffs are "similarly situated."

Defendants argue that some of Osman's evidence is inadmissible hearsay evidence that may not be considered.  But, while district courts within the Sixth Circuit have refused to consider inadmissible hearsay evidence, I find the reasoning in *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363 (E.D. Tenn. 2006) persuasive.  In *White*, the court compared conditional certification to motions for summary judgment, requiring admissible evidence under Rule 56.  First, the court stated that "[r]equiring a plaintiff to present evidence in favor of conditional certification that meets the standards in Rule 56 fails to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis for his case."  *White*, 236 F.R.D. at 368.

Second, the court noted that while motions for summary judgment seek to dispose of the case, "whether a motion for conditional certification is granted or denied, the case proceeds with discovery." *Id.* All of Osman's evidence will be considered at this notice stage of certification, without consideration of admissibility.

In support of the Motion for Stage-One Notice, Osman attached her personal declaration stating that, while employed as a server and bartender at the Lima, Ohio location of BWW, she performed untipped duties related and unrelated to her tipped occupation 40 percent of her work time, but was paid only her tipped wage. (Doc. No. 23-4). She asserts that she also observed fellow servers and bartenders performing these tasks and that there was a list of cleaning tasks hanging on the wall which servers and bartenders initialed after completing a task. *Id.* The list of cleaning tasks posted varied based on the shift. Osman asserts that a manager signed the list to verify the tasks were complete. *Id.* Osman also attached the cleaning lists to the motion. (Doc. No. 23-7).

Osman also attached the personal declarations of Samantha Steinke and Lisa Vance who both worked as servers and bartenders at Defendants' BWW franchises. (Doc. Nos. 23-5, 23-6). Steinke worked at the Lima, Ohio and St. Mary's, Ohio locations; Vance, the Nitro/Cross Lane, West Virginia and Charleston, West Virginia locations. *Id.* Both attested to similar untipped tasks performed by servers and bartenders during the various shifts at the different locations worked. *Id.* They also stated that they and other servers and bartenders spent a substantial amount of time—50 percent in Steinke's case—but were compensated only tipped wage. *Id.* Steinke also attested to the lists of cleaning duties that Osman referred to in her personal declaration. (Doc. No. 23-5 at 3, 12).

Osman moved for notice to be given to servers and bartenders of the Grube BWW franchises as potential plaintiffs. Grube owns approximately twenty BWW franchises in Ohio, West Virginia, Virginia, South Carolina, and Maryland. Because the personal declarations cite the same behavior at four different franchise locations, I find that Osman has made the "modest factual

showing" required to establish a "colorable basis" to find that potential plaintiffs are similarly situated.  Osman's motion for conditional certification is granted.  (Doc. No. 23).

B.      Form of Notice

Defendants object to the both the content and procedure proposed by Osman regarding notice.  I will discuss each briefly below.

1.      Discovery

Potential plaintiffs should be notified of the possibility that they may be required to participate in discovery.  In *Irvine v. Destination Wild Dunes Management, Inc.*, 132 F. Supp. 3d 707 (D.S.C. 2015), cited by Osman, the court held that the additional discovery language requested by defendants was "unnecessary" because "[t]he proposed notice makes clear that the Court has not ruled on the merits and that a class member could be called as a witness at trial and be required to attend."  132 F. Supp. 3d at 711.  That is not the case here. The notice makes no mention of the possibility that the potential plaintiffs may be required to provide any information, let alone be deposed or testify.  Because this is only the notice stage, the potential plaintiffs must also withstand stricter scrutiny at the decertification stage to verify they are in fact "similarly situated" after discovery concludes.  Therefore, potential plaintiffs should be aware that they may be required to participate in discovery.  The notice shall include the following statement under "What happens if I join the lawsuit?": "You may also be required to participate in written discovery, appear for deposition, and/or appear for trial in the Northern District of Ohio."

2.      Cost

Osman concedes that potential plaintiffs should be notified of possible costs associated with opting-in to the litigation.  I find Osman's proposed language to adequately notify the potential plaintiffs of possible costs and include it accordingly.

3.      Judicial Neutrality

At the notice stage, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). Osman's proposed notice states part, "THE COURT HAS TAKEN NO POSITION ON THE MERITS OF THIS LAWSUIT." I find the form and language of this statement to adequately inform potential plaintiffs of the court's neutral position.

4.      Alternative Counsel

Defendants assert that potential plaintiffs should be notified of the right to seek independent counsel. As noted by Osman, in *Gomez v. ERMC Property Management Co., LLC*, No. 3:13-cv-01081, 2014 WL 3053210, at *2 (N.D. Ohio July 7, 2014), I held such notice unnecessary because of the likelihood that additional counsel "would defeat the efficient operation of the litigation." In reasoning, I found that the proposed notice adequately informed potential plaintiffs of their right to pursue the lawsuit individually with the attorney of their choice. I find the same to be true here. Additional language regarding the right to retain independent counsel is unnecessary.

5.      Notice Period

As will be discussed later, equitable tolling is not granted to potential plaintiffs at this time. The notice period will be set as three years prior to the date this opinion is issued. All servers and bartenders employed at one of Defendants' BWW franchises will be issued notice of the collective action.

6.      Mail v. Email

Defendants object to notice in the form of both U.S. and electronic mail. In *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778 (S.D. Ohio Dec. 21, 2012), cited by BWW, the court found that "[p]ermitting transmission by mail and by email to former employees… helps ensure that all potential plaintiffs receive notice of their right to join this lawsuit." *Id.* at *4. Since at least four years have elapsed since the start of the notice period, there is a definite possibility that the potential plaintiffs have moved or changed their email addresses. Like the court in *Wolfram*, I find

that using both methods will increase the chance that potential plaintiffs will be notified by at least one method of notice.

7.      Reminder

As noted by Defendants, courts are generally reluctant to send reminder notices at the risk of jeopardizing judicial neutrality. *See, e.g.*, *Hardesty v. Kroger Co.*, No. 1:16-cv-298, 2016 WL 3906236, at *2 (S.D. Ohio July 19, 2016) ("Courts should be hesitant to authorize duplicative notice because it may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims."); *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp.3d 1063, 1074-75 (S.D. Ohio 2016) (same). Though Osman cites two cases where courts allowed reminder notices, neither gives reasoning as to why it was permitted. In this case, I find the dual forms of initial notice sufficient and do not find a reminder notice necessary to inform potential plaintiffs of the right to opt-in.

8.      Employee Numbers

"Individuals' private information, which they entrusted in their employer, shall not be disclosed except for cause." *Lewis v. Huntington Nat'l Bank*, at *2 (S.D. Ohio June 20, 2011). Defendants argue that employee identification numbers are private and should not be disclosed to Osman without cause. *See, e.g.*, *Swigart*, 276 F.R.D. at 215 (denying plaintiff's request for employee identification numbers because of failure to "justify their request"). Osman asserts only that the employee numbers will be important to acquire information about plaintiffs who opt-in. Since Osman has not asserted why the employee numbers are necessary before plaintiffs opt-in, I find it unnecessary for Defendants to provide this information.

9.      Opt-in Period

Defendants move the court for an opt-in period of 45-days rather than the 60-days proposed by Osman. Both cite cases in support of their proposed opt-in periods of district courts within the Sixth Circuit. Since Defendants failed to cite a reason why it would be prejudiced by an additional fifteen days, I find the opt-in period of 60 days requested by Osman to be reasonable.

14

V.  MOTION FOR EQUITABLE TOLLING

Equitable tolling is the exception rather than the rule, granted "only sparingly." *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 90 (1990). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wisc. v. United States*, 136 S.Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). One element concerns the litigant's own actions, while the other covers matters outside her control. *Menominee*, 136 S.Ct. at 756. The trial court, in its discretion, may grant equitable tolling on a "case-by-case basis." *Truitt v. City of Wayne,* 148 F.3d 644, 648 (6th Cir. 1998). Some factors the trial court may consider include:

> (1) The petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 437 (6th Cir. 2007). But this is not a comprehensive list nor are all these factors necessarily relevant in every case. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). Ultimately, it is the obligation of the moving party to prove that extending the statute of limitations is necessary to avoid inequity. *Jackson v. United States*, 751 F.3d 712, 718-19 (6th Cit. 2014).

In this case, Osman moved for equitable tolling on behalf of potential plaintiffs in the collective action. As acknowledged by both parties, I have previously ruled on this issue in the context of FLSA collective action suits. *Kampfer v. Fifth Third Bank*, No. 3:14-cv-2849, 2016 WL 1110257 (N.D. Ohio Mar. 22, 2016). Defendants are correct that my ruling in *Kampfer* does not mandate equitable tolling in every FLSA case, including this one. As discussed in *Kampfer*, the issue of whether to grant equitable tolling to potential plaintiffs before they opt-in to the collective action has been a matter of some debate among my trial court colleagues. Since my ruling, four of my

colleagues within the Sixth Circuit have discussed this issue. Two have granted motions to equitably toll the statute of limitations for potential plaintiffs. *See, e.g.*, *Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341 (W.D. Tenn. 2016) (Breen, C.J.); *Patton v. ServiceSource Del., Inc.*, No. 3:15-01013, 2016 WL 4441424 (M.D. Tenn. Aug. 23, 2016) (Sharp, J.). One denied the motion as premature. *See Burgess v. Wesley Fin. Grp., LLC*, Case No. 3:16-cv-1655, 2017 WL 1021294 (M.D. Tenn. Mar. 16, 2017) (Trauger, J.).

The fourth case presented a curious procedural position in which the initial motion for equitable tolling was denied as premature. *Kutzback v. LMS Intellibound, LLC*, -- F. Supp. 3d --, 2017 WL 564113, at *4 (W.D. Tenn. Feb. 10, 2017) (Claxton, M.J.). Even though the plaintiff was still "unable to ascertain all individuals who would be adversely affected if the statute of limitations is not tolled," he filed a second motion for equitable tolling on behalf of potential plaintiffs. *Id.* In support, the plaintiff noted that the statute of limitations for an FLSA claim is either two or three years depending on the culpability of the defendant. Therefore,

> "by function of law any Opt–in Plaintiff who worked for the Defendants in at least one week more than two (2) years prior to filing their consent to join but within 161 weeks (i.e. 2 years plus 400 days) in the case could be adversely impacted. Likewise, any Opt–in Plaintiff who worked for Defendants in at least one week more than three years prior to the date on which they filed their consent to join but within 213 weeks (i.e. 3 years + 400 days) of same would be negatively impacted and prejudiced."

*Id.* at *4, n.3 (400 days reflected the number of days that passed from the plaintiff moved for conditional certification to the day the court granted the motion). The court found the argument persuasive and stated that "the 'known and definite certainty' of a class of Opt–in Plaintiffs, while not individual, is specific enough for the Court to address the issue on its merits." *Id.* Here, about a year has passed since Osman moved for conditional certification.

Following my previous reasoning and that of the majority of my colleagues since that time, I will consider the motion for equitable tolling on the merits. Defendants contend that potential plaintiffs had actual or constructive knowledge of the action because of Plaintiff's counsel's website

and social media campaign providing information about BWW FLSA litigation.  Based on that knowledge, Defendants state that potential plaintiffs' failure to opt-in earlier reflects a lack of diligence.  I agree.

 I will take judicial notice of the publicly available website maintained by Plaintiff's counsel, Werman Salas P.C.  *See* Buffalo Wild Wings Minimum Wage Lawsuit, *available at* http://bwwlawsuit.com/frequently-asked-questions/ (last visited June 29, 2017). The website, copyrighted in 2015, notifies potential plaintiffs specifically of the case against BWW franchise owner, Blazin Wings, Inc.  But in a yellow box displayed predominantly on the homepage, the website states, "**CONTACT US** if you worked for a Buffalo Wild Wings **franchise location** to learn about our other BWW lawsuits and investigations."  Additionally, the website gives information about the alleged FLSA tipped wage violations, which BWW job titles are involved in these FLSA actions, and Plaintiff's counsel's prior successful resolution of similar claims.  Finally, the website explains the general nature of collective actions and stresses the importance of contacting Plaintiff's counsel "as soon as possible" because,

> Under state and federal laws that govern lawsuits for owed minimum wages, rules called the statutes of limitations may limit the amount of time you have to protect your rights. This means that it is possible that delay in taking action will reduce the amount of back wages that you might recover if the lawsuit is ultimately successful. If you are awarded money under federal law, you will likely be able to collect back wages only for the two or three years immediately prior to the date of filing your Consent Form with the Court.

*Frequently Asked Questions*, Buffalo Wild Wings Minimum Wage Lawsuit, *available at* http://bwwlawsuit.com/frequently-asked-questions/ (last visited June 28, 2017).

Plaintiff does not address the website or dispute Defendant's claim that Plaintiff's counsel "engaged in a direct marketing campaign on Facebook."  She only asserts that she herself acted with diligence and that her diligence should be imputed to potential plaintiffs.  While this argument may be sufficient in some circumstances, I am not persuaded in this case.  The website was available even before Osman filed her complaint in 2016.  Given the detailed content regarding FLSA litigation

17

against BWW franchises, the number of cases currently pending against other BWW franchises, and Plaintiff's counsel's active campaign to notify potential plaintiffs of this litigation on social media, I find that Osman has failed to meet her burden in showing that this exceptional remedy should be granted to all potential plaintiffs at this time.  Osman's motion for equitable tolling is denied without prejudice.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is denied.  (Doc. No. 17). Plaintiff's motion for step-one notice is granted.  (Doc. No. 23)  The notice should be corrected to reflect my rulings on its contents and sent to potential plaintiffs by both U.S. and electronic mail. The opt-in period is 60 days, but Plaintiff's request for reminder notice is denied.  Finally, Plaintiff's motion for equitably tolling is denied without prejudice.  (Doc. No. 37).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge