IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SARA OSMAN, *etc.*

        Plaintiff

*v.*

GRUBE, INC., *et al.*

        Defendants

Case No. 3:16-cv-00802-JJH
(Complex Track)

Magistrate Judge James R. Knepp

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR APPROVAL OF SETTLEMENT, APPOINTMENT OF SETTLEMENT
ADMINISTRATOR, APPROVAL OF SERVICE AWARDS,
AND ATTORNEY'S FEES AND COSTS**

Douglas M. Werman (admitted pro hac vice)
Zachary C. Flowerree (admitted pro hac vice)
WERMAN SALAS, P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
T:  (312) 419-1008
F:  (312) 419-1025
E:  dwerman@flsalaw.com
    zflowerree@flsalaw.com

Drew Legando (0084209)
Jack Landskroner (0059227)
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T:  (216) 522-9000
F:  (216) 522-9007
E:  drew@lgmlegal.com
    jack@lgmlegal.com

Counsel for Plaintiff and Collective Action
Members

## TABLE OF CONTENTS

I.      FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

II.     ISSUES TO BE DECIDED ............................................................................................ 2

III.    SUMMARY OF THE ARGUMENT .............................................................................. 2

IV.    SUMMARY OF THE SETTLEMENT TERMS .............................................................. 3

        A.  Monetary Awards and Release of Claims ...................................................... 3

        B.  Settlement Administration and Distribution .................................................. 5

V.      ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION
        SETTLEMENTS ............................................................................................................ 6

VI.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS A FAIR AND
        REASONABLE RESOLUTION OF A *BONA FIDE* DISPUTE ...................................... 6

        A.  The Proposed Settlement Is the Product of Contested Litigation ................................. 7

        B.  The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide*
            Dispute Between the Parties .......................................................................... 8

          1.  A *Bona Fide* Dispute Between the Parties Existed Over Liability ....................... 8

          2.  The Proposed Settlement Is Fair and Reasonable ................................................ 9

               (i)      The Settlement was Fairly and Honestly Negotiated .................................. 9

               (ii)     The Ultimate Outcome of the Litigation was Unknown ........................... 9

               (iii)    The Value of the Settlement is Significant .............................................. 10

               (iv)    Plaintiffs' Attorneys and Named Plaintiffs Support the Settlement ......... 11

VII.   THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED ........................ 12

VIII.  THE PAYMENT OF PLAINTIFFS' COUNSEL'S ATTORNEY'S FEES AND
        PLAINTIFFS' LITIGATION EXPENSES SHOULD BE APPROVED ........................ 13

        A.  Plaintiffs' Requested Attorney's Fees in the Amount of $166,666.66 is Reasonable 13

          1.  Value of the Benefit Provided .................................................................. 14

i

2.   Value of the Services Rendered ................................................................... 15

3.   Fee Arrangement ........................................................................................ 17

4.   Societal Interest ......................................................................................... 18

5.   Case Complexity ........................................................................................ 18

6.   Skill and Reputation of Counsel ............................................................... 18

B.  Plaintiffs' Litigation Costs Should Be Approved ...................................... 19

C.  The Court Should Appoint a Settlement Administrator and Approve its Fee ............ 19

IX.     CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Adcock–Ladd v. Secretary of Treasury,*
227 F.3d 343 (6th Cir.2000) .................................................. 15

*A.H. Phillips, Inc. v. Walling,*
324 U.S. 490 (1945).............................................................. 18

*Barnhart v. Chesapeake Bay Seafood House Assoc., LLC,*
No. JFM-16-01277 (D. Md.)................................................. 16

*Beckman v. KeyBank, N.A.,*
293 F.R.D. 467 (S.D.N.Y. 2013) ......................................... 18

*Bernal v. Vankar Enter., Inc.,*
579 F. Supp. 2d 804 (W.D. Tex. 2008).................................. 10

*Black v. P.F. Chang's China Bistro, Inc.,*
No. 16-cv-3958 (N.D. Ill.) .................................................. 16

*Blum v. Stenson,*
465 U.S. 896 (1984).............................................................. 15

*Bowling v. Pfizer,*
102 F.3d 777 (6th Cir. 1996)  ............................................. 14

*Briggs v. PNC Financial Services Group, Inc.,*
No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ............................................. 6

*Brooklyn Savings Bank v. O'Neil,*
324 U.S. 697 (1945).............................................................. 6

*Cannon v. Time Warner NY Cable LLC,*
No. 13-cv-02521, 2015 WL 4498808 (D. Colo. July 24, 2015) ................................................ 9

*Chrapliwy v. Uniroyal, Inc.,*
670 F.2d 760 (7th Cir.1982) ............................................. 15, 16

*Clark v. Honey Jam Café, LLC,*
No. 11 C 3842 (N.D. Ill.) .................................................. 16

*Connectivity Sys. Inc. v. Nat'l City Bank,*
2011 WL 292008 (S.D. Ohio Jan. 25, 2011) ........................ 18

*Cooper v. Winking Lizard, Inc.*,
   Case No. 1:16-cv-1513, ECF No. 71 (N.D. Ohio) ............................................................. 6, 16

*Cope v. Let's Eat Out, Inc.*,
   No. 6:16-cv-03050 (W.D. Mo.) .............................................................................. 16

*Cornell v. World Wide Business Servs. Corp.*,
   2015 WL 6662919 (S.D. Ohio Nov. 2, 2015) ...................................................................... 9

*Crosby v. Bowarter Inc. Ret. Plan*,
   262 F. Supp. 2d 804 (W.D. Mich. 2003) ............................................................... 17

*Cureless v. Great Am. Real Food Fast, Inc.*,
   No. 3:10–cv–00279–JPG–SCW (S.D. Ill.) ..................................................... 16

*Dillworth v. Case Farms Processing, Inc.*,
   No. 5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ...................... 11, 12, 15

*Dillworth v. Case Farms Processing, Inc.*,
   5:08-CV-1694 (N.D. Ohio 2009) ........................................................................ 14

*Driver v. AppleIllinois, LLC*,
   No. 06-cv-6149 (N.D. Ill.) .................................................................................. 16

*Fast v. Applebee's Inter. Inc.*,
   Nos. 10–1725, 10–1726 (8th Cir.) ...................................................................... 16

*Filby v. Windsor Mold USA, Inc.*,
   2015 WL 1119732 (N.D. Ohio March 11, 2015) (Helmick, J.) .......................... 6, 7

*Fincham v. Nestle Prepared Foods Co.*,
   1:08-CV-73 (N.D. Ohio 2008) ........................................................................... 14

*Geier v. Sundquist*,
   372 F.3d 784 (6th Cir.2004) .............................................................................. 15

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523, 1529 (2013) .............................................................................. 6

*Gentrup v. Renovo Servs., LLC*,
   2011 WL 2532922 (S.D. Ohio June 24, 2011) ..................................................... 18

*Greenwell v. R. Wings R. Wild, LLC*,
   No. 4:15-cv-00742-DPM (E.D. Ark.) .................................................................. 16

iv

*Grosscup v. KPW Mgmt., Inc.*,
No. 16-cv-6501 (N.D. Ill.) ..................................................................................... 16

*Hadix v. Johnson*,
322 F.3d 895 (6th Cir. 2003) ................................................................................. 12

*Hadix v. Johnson*,
65 F.3d 532 (6th Cir.1995) ..................................................................................... 15

*Hainey v. Parrot*,
617 F. Supp. 2d 668 (S.D. Ohio 2007) ..................................................................... 8

*Hart v. RCI Hosp. Holdings, Inc.*,
No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ................... 13

*Ide v. Neighborhood Rest. Partners, LLC*,
No. 1:13-cv-00509-MHC (N.D.Ga.) ........................................................................ 16

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ........................................................................... 11

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................... 19

*In re Domestic Air Tranp. Antitrust Litig.*,
148 F.R.D. 297 (N.D.Ga.1993) ............................................................................... 11

*In re Newbridge Networks Sec. Litig.*,
1998 WL 765724 (D.D.C. Oct. 23, 1998) ............................................................... 11

*In re Polyurethane Foam Antitrust Litig.*,
135 F. Supp. 3d 679 (N.D. Ohio 2015) .................................................................... 13

*In re Ravisent Techs., Inc. Sec. Litig.*,
2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............................................................. 11

*Jackson v. Papa John's*,
Case No. 1:08-CV-2791 (N.D. Ohio 2008) ............................................................. 14

*Johnson v. Midwest Logistics Sys., Ltd.*,
2013 WL 2295880 (S.D. Ohio May 24, 2013) ......................................................... 13

*Johnson v. Pinstripes, Inc.*,
No. 12 C 1018 (N.D. Ill.) ........................................................................................ 16

*Knox v. The Jones Group,*
　　Case No. 1:15-1738-SEB (S.D. Ind.) ............................................................... 16

*Knox v. Jones Grp.,*
　　No. 15-CV-1738 SEB-TAB, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2017) ................ 6, 16, 18

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.,*
　　No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ........................................ 13

*Lazy Oil Co. v. Witco,*
　　95 F.Supp.2d 290 (W.D. Pa.1997) ..................................................................................... 11

*Lonardo v. Travelers Indem. Co.,*
　　706 F. Supp. 2d 766 (N.D. Ohio 2010) .............................................................................. 17

*Louisville Black Police Officers Org. v. City of Louisville,*
　　700 F.2d 268 (6th Cir. 1983) ............................................................................................. 15

*Lukas v. Advocate,*
　　No. 1:14-cv-2740, D.E. 150 (N.D. Ill. June 29, 2016) ...................................................... 13

*Lynn's Food Stores, Inc. v. U.S.,*
　　679 F.2d 1350 (11th Cir. 1982) ........................................................................................ 6, 7

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,*
　　834 F.2d 677 (7th Cir. 1987) ............................................................................................. 11

*McGhee v. Allied Waste Indus.,*
　　Case No. 1:07-CV-1110 (N.D. Ohio 2007) ....................................................................... 14

*McLamb v. High 5 Hospitality,*
　　No. 16-0039 GMS (D. Del.) .............................................................................................. 16

*Morgan v. Speak Easy, LLC,*
　　625 F.Supp.2d 632 (N.D. Ill. 2007) .................................................................................. 10

*Mouloki v. Epee,*
　　No. 14 C 5532, 2017 WL 2791215 (N.D. Ill. June 27, 2017) ...................................... 16, 18

*Moulton v. U.S. Steel Corp.,*
　　581 F.3d 344 (6th Cir. 2009) ............................................................................................... 9

*Osman v. Grube, Inc.,*
　　No. 16-CV-802, 2017 WL 2908864 (N.D. Ohio July 7, 2017) ............................................ 2

vi

*Puglisi v. TD Bank, N.A.*,
    No. 13 CIV. 637 GRB, 2015 WL 4608655 (E.D.N.Y. July 30, 2015) ................................... 13

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974) ...................................................................................... 14

*Rawlings v. Prudential-Bache Prop., Inc.*,
    9 F.3d 513 (6th Cir. 1993) .......................................................................................... 13

*Robbins v. Blazin Wings, Inc.*,
    No. 15-06340 (W.D.N.Y.) ........................................................................................... 16

*Romero v. Top-Tier Colorado LLC*,
    No. 16-1057 (10th Cir. 2017) ....................................................................................... 16

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
    No. 4:09-CV-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) ................................... 14

*Roy v. JK&T Wings, Inc.*,
    No. 4:16-cv-10836-TSH (D. Mass.) .............................................................................. 16

*Sanchez v. Roka Akor Chicago LLC*,
    No. 14 C 4645, 2017 WL 1425837 (N.D. Ill., Apr. 20, 2017) ...................................... 16, 18

*Sand v. Greenberg*,
    2011 WL 784602 (S.D.N.Y. Oct. 6, 2011) ..................................................................... 12

*Schaefer v. Walker Bros. Enter. Inc.*
    No. 15-1058 (7th Cir. 2016) ........................................................................................ 16

*Schmidt v. Smith & Wollensky LLC*,
    268 F.R.D. 323 (N.D. Ill. 2010) ............................................................................... 16, 18

*Schneider v. Goodyear Tire & Rubber Co.*,
    2014 WL 2579637 (N.D. Ohio 2014) .............................................................................. 7

*Solis v. Lorraine Enter.*,
    907 F. Supp. 2d 186 (D.P.R. 2012) .............................................................................. 10

*Soto v. Wings R' Us Romeoville, Inc.*,
    No. 15-cv-10127 (N.D. Ill.) .......................................................................................... 16

*Stokes v. Consolidated Wings Investment, LLC*,
    No. 1:15-cv-01932-RLY-DKL (S.D. Ind.) ....................................................................... 16

*Swigart v. Fifth Third Bank,*
  2014 WL 3447947 (S.D. Ohio July 11, 2014) ................................................ 15, 18

*Vance v. Ala Carte Entm't, Inc.*,
  No. 01 C 5817, 2003 WL 24311811 (N.D. Ill. Apr. 14, 2003)................................. 10

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.,*
  436 F. App' 496 (6th Cir. 2011) ................................................................. 13

*Williams v. Vukovich,*
  720 F.2d 909, 922-23 (6th Cir. 1983) ............................................................ 11

*Woods v. New York Life Ins. Co.*,
  686 F.2d 578 (7th Cir. 1982) ..................................................................... 6

## STATUTES AND RULES

Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ................................................ *passim*

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 1

Federal Rule of Civil Procedure 23 ............................................................. 6, 13

29 C.F.R. §206(a)(1) ................................................................................ 10

29 C.F.R. §216(b) .............................................................................. 6, 13

## MISCELLANEOUS AUTHORITIES

4 *Newberg on Class Actions* § 11.38, at 11- 80 ......................................................... 13

Named Plaintiff Sara Osman ("Named Plaintiff"), individually and on behalf of the Opt-in Plaintiffs (collectively, "Plaintiffs"), and Defendants[1] have reached a Settlement in the above-captioned lawsuit (the "Action").[2] For the reasons stated in this Memorandum of Law, Plaintiffs request that the Court enter their proposed order and approve the settlement, appoint the settlement administrator, and approve the service awards, attorney's fees and costs.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This is a minimum wage case brought on behalf of servers and bartenders who worked at more than a dozen Buffalo Wild Wings ("BWW") restaurants owned and operated by Defendants in Maryland, Ohio, South Carolina, Virginia, and West Virginia. Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay Plaintiff and other tipped employees all earned minimum wages. ECF No. 1. In particular, Plaintiffs allege Defendants violated the FLSA by paying their servers and bartenders sub-minimum, "tip credit" hourly rates of pay while: (1) requiring them to perform non-tipped work that is "unrelated" to their tipped jobs; (2) requiring them to perform otherwise "related" non-tipped work for more than 20 percent of their work time in individual workweeks; (3) requiring them to pay for customer walkouts from their tips; and (4) failing to inform them of the tip-credit provisions of the FLSA.

This action was filed on April 4, 2016. ECF No. 1. On June 3, 2016, Defendants filed a Rule 12(b)(6) partial motion to dismiss the "related" and "unrelated" non-tipped work claims. ECF No. 17. On July 12, 2016, Named Plaintiff filed a motion to grant step-one notice under the

---

[1]  "Defendants" are Grube, Inc. d/b/a Buffalo Wild Wings and Scarlet & Gray Enterprises, LTD. d/b/a Buffalo Wild Wings.

[2]  The Settlement is memorialized in the Joint Stipulation of Settlement ("Joint Stipulation" or "Settlement"), attached as Exhibit 1. All capitalized terms are defined in the Settlement.

FLSA to similarly situated tipped employees. ECF No. 23.

More than a year later, on July 7, 2017, the Court denied Defendants' partial motion to dismiss and granted Plaintiff Osman's motion for step-one notice under the FLSA. ECF No. 50; *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *1 (N.D. Ohio July 7, 2017). Prior the Court granting Plaintiff's motion, on September 28, 2016, Named Plaintiff filed a motion for equitable tolling (ECF No. 37) based on the amount of time the motion for step-one notice was pending with the Court. The Court denied that motion without prejudice as part of its July 7 Order. ECF No. 50. A total of 323 persons, including Plaintiff Osman, are currently party Plaintiffs to the FLSA claims.[3]

On February 7, 2018, the parties participated in a settlement conference with Magistrate Judge Knepp and settled the case.

## II.      ISSUES TO BE DECIDED

Whether the Court should grant Plaintiff's motion to approve the Parties' settlement, including: (1) Settlement Payments to Plaintiffs; (2) a Service Award of $7,500 to the Named Plaintiff and Service Awards of $750.00 to Opt-in Plaintiffs Lisa Vance and Samantha Steinke; (3) Plaintiffs' Attorney's Fees in the amount of $166,666.66; (4) Plaintiffs' Litigation Expenses in the amount of $10,128.26; and (5) appointment of Rust LLC as the settlement administrator and approval of $6,000.00 in fees for its work in administering the settlement.

## III.     SUMMARY OF THE ARGUMENT

Because the Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties, Plaintiffs request that the Court enter the proposed Order, attached as Exhibit 2,

---

[3]      Defendants claim 2 Opt-In Plaintiffs were not employed by them.

approving the Parties' Settlement. Defendants do not oppose entry of the Proposed Order.

## IV.     SUMMARY OF THE SETTLEMENT TERMS

### A.      Monetary Awards and Release of Claims

Defendants have agreed to pay $500,000.00 to settle the claims in this Action, which shall be used to provide for: (1) Settlement Payments to Plaintiffs, (2) Service Awards; (3) Plaintiffs' attorney's fees; (4) Plaintiffs' Counsel's Litigation Expenses; and (5) Settlement Administration Expenses. The Settlement covers only the Named Plaintiff and Opt-in Plaintiffs.[4]

From the Settlement Fund, $166,666.66 will be allocated to Plaintiffs' Counsel's attorney's Fees; $10,128.26 will be allocated to Plaintiffs' Counsel's Litigation Expenses that will be reimbursed to Plaintiffs' Counsel; $6,000.00 will be allocated to Rust, LLC for its work in administering the settlement; and $9,000 will be allocated to Service Awards to the Named Plaintiff and two early Opt-in Plaintiffs for the extra time and effort they expended in recovering Settlement Payments on behalf of all Settlement Class Members. The "Net Settlement Fund" represents the settlement proceeds that remain after the above identified deductions are taken from the Settlement Fund. The Net Settlement Fund will be divided among the Settlement Class Members on a *pro rata* basis using the computations described in Section 4(d) of the Joint Stipulation:

Each Settlement Class Member's Settlement Payment shall be calculated as follows:

---

[4]      The term "Opt-In Plaintiffs" refers to persons who timely filed a Consent Form to be a party-plaintiff to the Action and who did not withdraw their Consent Form or were not later dismissed from the Action. A list of all individuals meeting the definition of Settlement Class Members, is attached to the Settlement Agreement as Exhibit A.

i.      For hours worked by Settlement Class Members that were paid by Defendants at the sub-minimum tip-credit wage rate prior to November 15, 2015, their minimum wage back wages ("Total Minimum Wages") will be calculated as follows:

[(Hours * $7.25) – (Hours * the sub-minimum tip-credit wage rate the Settlement Class Member was paid) * 50%].

ii.      For hours worked by Settlement Class Members that were paid by Defendants at the sub-minimum wage tip-credit wage rate after November 15, 2015, the Total Minimum Wages will be calculated as follows:

[(Hours * $7.25) – (Hours * the sub-minimum tip-credit wage rate the Settlement Class Member was paid) * 10%];

iii.      Each Settlement Class Member's Total Minimum Wages shall be divided by the sum of all Settlement Class Members' Total Minimum Wages. The quotient shall represent each Settlement Class Member's "Pro Rata Factor." Exhibit A to the Settlement Agreement identifies each Settlement Class Member and his or her Pro Rata Factor.

iv.      All Settlement Class Members shall be eligible to receive a minimum Settlement Payment of $100.00 ("Minimum Settlement Payment").

v.      Each Settlement Class Member's Settlement Payment shall be computed as follows:

(1)      Each Settlement Class Member's Pro Rata Factor will be multiplied by the Net Settlement Fund. The result will be referred to herein as "Preliminary Settlement Award."

(2)      If a Settlement Class Member's Preliminary Settlement Award is less than $100.00, the Settlement Class Member's Settlement Payment will be increased to the Minimum Settlement Payment of $100.00.

4

(3)     All Minimum Settlement Payments shall be subtracted from the Net Settlement Fund, which shall yield the "Adjusted Net Settlement Fund."  Each Settlement Class Member whose Preliminary Settlement Award exceeds $100.00 will have his or her Pro Rata Factor recalculated, omitting data from all Minimum Settlement Payment recipients. Their Total Minimum Wages shall be divided by the sum of all Settlement Class Members' Total Minimum Wages whose Preliminary Settlement Award exceeds $100.00. The quotient will be referred to as the "Adjusted Pro Rata Factor." The Settlement Payment for each Settlement Class Member whose Settlement Award exceeds $100.00 shall be computed by multiplying his or her Adjusted Pro Rata Factor by the Adjusted Net Settlement Fund. If, after the computations described in this paragraph are performed, any Settlement Class Member's Settlement Award is less than $100.00, the calculations described Section in 4(d)(v) will be repeated so that each Settlement Class Member is eligible to receive a minimum Settlement Payment of $100.00.

The Settlement Payments range from a minimum payment of $100.00 to a maximum payment of $6,199.91. Ex. 3, Werman Decl. ¶ 15.

In exchange for these monetary awards, and the other consideration detailed in the Joint Stipulation, Settlement Class Members who timely negotiate their settlement checks will provide a limited release. They will only release Defendants from all minimum wage claims asserted in the lawsuit that arise under the Fair Labor Standards Act or parallel state law. Named Plaintiffs will provide a general release of all claims related to their employment by Defendants. A full version of the "Release of Claims" is set forth in Section 5 of the Joint Stipulation.

## B.     Settlement Administration and Distribution

After approval of the Settlement, the Settlement Administrator will mail to all Plaintiffs a check representing his or her Settlement Payment along with a letter explaining the Settlement. Settlement Class Members will be given ninety (90) days from the mailing of the settlement

checks to negotiate their settlement checks. If any checks are not negotiated within the ninety (90) day deadline, the Settlement Administrator shall return the value of those uncashed checks to Defendants.

## V.    ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION SETTLEMENTS

Collective actions under the FLSA are fundamentally different than class actions raised under Rule 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The due process concerns present in Rule 23 class actions are not present in collective actions brought under the FLSA, because putative class members to the FLSA collective action must affirmatively join the lawsuit by opting-in, instead of opting-out, in order to be bound by decisions of the Court. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

Courts regularly apply a one-step approach to determine whether an FLSA settlement should be approved. *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) ("A one-step settlement approval process is appropriate."); *Briggs v. PNC Financial Services Group, Inc.,* No. 15-cv-10447, 2016 WL 7018566, at *1  (N.D. Ill. Nov. 29, 2016) (same); *Cooper v. Winking Lizard, Inc.*, Case No. 1:16-cv-1513, ECF No. 71 (N.D. Ohio) (approving FLSA collective action settlement in one step).

## VI.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS A FAIR AND REASONABLE RESOLUTION OF A *BONA FIDE* DISPUTE

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *Filby v. Windsor Mold USA, Inc.,* 2015 WL 1119732, at *3 (N.D. Ohio March 11, 2015)

(Helmick, J.) (quoting *Schneider v. Goodyear Tire & Rubber Co.,* 2014 WL 2579637, at *2 (N.D. Ohio 2014). "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby,* 2015 WL 1119732, at *2 (quoting *Schneider,* 2014 WL 2579637, at *2 (citations omitted)).

The Court, therefore, should perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

Based on the contested nature of this litigation and the quality of the Settlement, this Court should conclude that this Settlement is a reasonable resolution of a *bona fide* dispute in a contested litigation.

### A.     The Proposed Settlement Is the Product of Contested Litigation

The Settlement is a result of contested litigation given the fact that the settlement has been reached in the context of this lawsuit. The lawsuit has been pending for nearly two years, and was resolved only after the Parties briefed, and the District Court Judge resolved, Defendants' partial motion to dismiss, Plaintiffs' Motion for Step-One FLSA Notice, and after Defendants produced certain documents, including time and pay records, in advance of the settlement conference.

Moreover, the Parties had a full opportunity to analyze the pertinent factual and legal

issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. Only with the assistance of the Magistrate Judge at a supervised settlement conference were the Parties able to resolve this dispute. Ex. 3, Werman Decl., ¶ 14. "[T]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *See Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). For these reasons, the Court should conclude that the proposed Settlement is the product of contested litigation.

### B. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. Both issues implicated by this second prong of the Court's settlement approval inquiry are also satisfied.

### 1. A *Bona Fide* Dispute Between the Parties Existed Over Liability

Plaintiffs alleged that Defendants violated the tip-credit provisions of the FLSA and thus were required to pay their servers and bartenders the full applicable minimum wage. Defendants denied Plaintiffs' allegations, denied Plaintiffs' claims were cognizable under the FLSA, asserted that Plaintiffs were properly paid, and denied that Plaintiffs are entitled to damages. Defendants further argued that any potential recovery must be limited to the period before November 15, 2015 based on Defendants' policy changes.

The Parties also disputed whether collective treatment of Plaintiffs' FLSA claims is appropriate. If the matter was not resolved by settlement, there was a risk that Plaintiffs would not succeed in pursuing collective treatment of the action. Defendants would likely argue that the

differences among restaurant locations precluded collective treatment.

Moreover, the Court's supervision of the settlement conference undermines any notion that the settlement is a product of collusion, or "that the one entity with a bird's eye view of the proceedings—the district court judge—somehow missed the signs that the parties were merely engaged in pretense and posturing." *See Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 351 (6th Cir. 2009).

### 2. The Proposed Settlement Is Fair and Reasonable

In determining whether a FLSA Settlement is fair and reasonable, courts generally examine four factors, which include whether: (1) the parties fairly and honestly negotiated the settlement; (2) serious questions of law and fact exist which place the ultimate outcome in doubt; (3) the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, the settlement is fair and reasonable. *Cannon v. Time Warner NY Cable LLC,* 2015 WL 4498808 (D. Colo. July 24, 2015). Each of these factors is satisfied.

### (i) The Settlement was Fairly and Honestly Negotiated

The Settlement was the product of a Magistrate Judge-supervised settlement conference. The Court has first-hand knowledge of the negotiation process, and the extensive underlying litigation that made the settlement possible.

### (ii) The Ultimate Outcome of the Ligation was Unknown

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendants' various defenses. If the litigation had continued, Plaintiffs would have faced obstacles and uncertainties, including the outcome of a motion for decertification, summary judgment, and potentially a trial. *See, e.g., Cornell v. World Wide Business Servs.*

9

*Corp.*, 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs).

Even if Plaintiffs ultimately prevailed on the issue of liability, Plaintiffs would need to prove the amount of damages Plaintiffs suffered. With regard to damages, Plaintiffs contended when an employer prevents an employee from retaining all of their tips, a full forfeiture of the tip credit is the appropriate remedy. *See, e.g., Solis v. Lorraine Enter.*, 907 F. Supp. 2d 186, 190 (D.P.R. 2012) (citing cases); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008); *Vance v. Ala Carte Entm't, Inc.*, No. 01 C 5817, 2003 WL 24311811, at *2 (N.D. Ill. Apr. 14, 2003). Defendants insisted that minimum wage violations are determined on a shift by shift or workweek by workweek basis, and a total forfeiture of the tip credit is improper.  *See* 29 U.S.C. 206(a)(1); *Morgan v. Speak Easy, LLC*, 625 F.Supp.2d 632, 645 (N.D. Ill. 2007).  The resolution of this issue alone would have resulted in a wide swing in the damages amount.

### (iii)     The Value of the Settlement is Significant

The benefit that Plaintiffs will receive from the Settlement as against the maximum they could have received if they had prevailed at trial is fair and reasonable. Each Settlement Class Member's Settlement Payment is set forth in Exhibit A of the Joint Stipulation. The Settlement Payments range from a minimum payment of $100.00 to a maximum payment of $6,199.91. Ex. 3, Werman Decl. ¶ 15. The total $500,000 settlement represents approximately a 50% forfeiture of the tip credit rate for every week that Opt-in Plaintiffs worked before November 15, 2015 plus 100% of their liquidated damages and a 10% forfeiture of the tip credit rate for every week that Opt-in Plaintiffs worked after November 15, 2015 plus 100% of their liquidated damages. The total $500,000 settlement represents a gross payment of $1,547.99 per Plaintiff. *Id.* at ¶ 16. Inasmuch as Plaintiffs alleged that they spent 40-50% of their time performing dual jobs, and

10

inasmuch as Defendants alleged Plaintiffs could only recover on their walk-out claims for the individual work weeks that they suffered such a charge-back, this result is more than fair and reasonable. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[5]

### (iv)  Plaintiffs' Attorneys and Named Plaintiffs Support the Settlement

Plaintiffs' Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Ex. 3, Werman Decl. ¶ 17.  Plaintiffs' Counsel believe the Settlement is fair and reasonable. *Id.* This factor supports approval of the Settlement. Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983), especially when the case has been developed through discovery.  *See In re Broadwing,*

---

[5]  *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D.Ga.1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

*Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006).

Additionally, the Named Plaintiff participated in the February 7, 2018 settlement conference and approved the terms of the Settlement. Ex. 3, Werman Decl. ¶ 18.   In light of the foregoing, the Court should approve the Parties' proposed Settlement of this Action.

## VII.   THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED

The Joint Stipulation contemplates providing a $7,500 Service Award to the Named Plaintiff and $750.00 Service Awards to early Opt-in Plaintiffs Lisa Vance and Samantha Steinke to acknowledge their time and effort expended in helping to achieve a successful Settlement. These payments are in addition to any payment they receive as their *pro rata* share of the Net Settlement Fund.

Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging member of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003); *accord Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *7 (N.D. Ohio March 8, 2010); *see also Sand v. Greenberg,* 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").

The role of the Named Plaintiff and early Opt-in Plaintiffs Vance and Steinke in this litigation was crucial. The Named Plaintiff reviewed the complaint and initiated the lawsuit, conferred with Plaintiffs' Counsel on a regular basis, provided a declaration in support of Step-One Notice, and attended the settlement conference. Ex. 3, Werman Decl., ¶ 20.  Early Opt-in Plaintiffs Vance and Steinke provided declarations that served as key factual support for Plaintiff's successful Motion for Step-One Notice. *Id.*  These payments are proportional to

12

service payments recently awarded to Named Plaintiffs in other FLSA actions. *See Cf., e.g., In re Polyurethane Foam Antitrust Litig.,* 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).[6]

## VIII. THE PAYMENT OF PLAINTIFFS' COUNSEL'S ATTORNEY'S AND PLAINTIFFS' LITIGATION EXPENSES SHOULD BE APPROVED

### A. Plaintiffs' Requested Attorney's Fees in the Amount of $166,666.66 is Reasonable

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

Plaintiffs' Counsel seek as their attorney's fees one-third of the common settlement fund. There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 F. App' 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). Courts readily approve the percentage-of-

---

[6]     *See also*, *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); see also *Lukas v. Advocate*, No. 1:14-cv-2740, D.E. 150 (N.D. Ill. June 29, 2016) (approving $15,000 service award to named plaintiff in FLSA wage action); *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713, at *19 (S.D.N.Y. Sept. 22, 2015) (approving $15,000 service payments for each of two named plaintiffs in state and federal wage action); *Puglisi v. TD Bank, N.A.*, No. 13 CIV. 637 GRB, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving $15,000 service payments to two class representatives in combined Rule 23 class action and FLSA collective action); see also 4 Newberg on Class Actions § 11.38, at 11- 80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs. *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorney's fees). One-third of the common fund is a reasonable attorney's fee award "and has been approved in similar FLSA collective actions in this judicial district." *Id.* at *8 (citing *Dillworth v. Case Farms Processing, Inc.,* 5:08-CV-1694 (N.D. Ohio 2009); *Jackson v. Papa John's,* Case No. 1:08-CV-2791 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co.,* 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07-CV-1110 (N.D. Ohio 2007)).

To assist the Court in determining whether the requested fee is reasonable, the Sixth Circuit has identified the following factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer,* 102 F.3d 777, 780 (6th Cir. 1996); *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

### 1.     Value of the Benefit Provided

This is a non-reversionary settlement in which Plaintiffs are provided direct cash payments representing a substantial recovery on their unpaid minimum wage claims. "Further, the settlement provides relatively early relief to [collective action] members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue. Absent settlement, the parties would have engaged in discovery from individual opt-in plaintiffs, of electronically-stored information, and a potential motion to decertifiy the collective, and

dispositive motions on merits and damages issues." *Swigart v. Fifth Third Bank,* 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014). Instead of the risks of continued litigation, the Settlement provides Plaintiffs who worked before November 15, 2015 with 50 percent of their owed minimum wages, which is well above the average recovery in FLSA lawsuits. *Dillworth*, 2010 WL 776933, at *8 (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average).

### 2.   Value of the Services Rendered

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir.2000)). There is, however, an exception to the general rule that the prevailing market rates of the local community govern the lodestar analysis, and, in this circuit, the exception is known as the "out-of-town specialist." *See Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir.1995) (citing *759 *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768–69 (7th Cir.1982)); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Attorneys who specialize in particular fields tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive. *See Chrapliwy,* 670 F.2d at 769 (emphasis added). When fees are sought for an "out-of-town specialist," "courts must determine (1) whether hiring the out-of-town specialist

15

was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix,* 65 F.3d at 535, citing *Chrapliwy,* 670 F.2d at 768–69.

Here it was reasonable for Plaintiffs to retain counsel from outside of the local community and to retain Werman Salas P.C. Plaintiffs' Counsel are leaders in litigating in federal courts throughout the United States FLSA "dual jobs" minimum wage claims.[7]  Ex. 3, Werman Decl. ¶ 37; *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *5 (S.D. Ind. Aug. 31, 2017) (describing Werman Salas P.C. "as national leaders in advocating the rights of working people in wage and hour litigation."); *Sanchez v. Roka Akor Chicago LLC*, No. 14 C 4645, 2017 WL 1425837, at *5-7 (N.D. Ill., Apr. 20, 2017) (same); *Mouloki v. Epee,* No. 14 C 5532, 2017 WL 2791215, at * 3, n. 4, (N.D. Ill. June 27, 2017) (describing Douglas M. Werman as a "highly respected and experienced lawyer[]" in "wage and hour cases."); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Castillo, J.) (recognizing Mr. Werman as a "highly experienced attorney" in wage and hour class actions).

---

[7]     See, e.g., *Driver v. AppleIllinois, LLC*, No. 06-cv-6149 (N.D. Ill.); *Schaefer v. Walker Bros. Enter. Inc.*; *Romero v. Top-Tier Colorado, LLC*, No. 16-1057 (10th Cir.); *Fast v. Applebee's Inter. Inc.*, Nos. 10–1725, 10–1726 (8th Cir.); *Cope v. Let's Eat Out, Inc.*, No. 6:16-cv-03050 (W.D. Mo.); *McLamb v. High 5 Hospitality*, No. 16-0039 GMS (D. Del.); *Greenwell v. R. Wings R. Wild, LLC*, No. 4:15-cv-00742-DPM (E.D. Ark.); *Barnhart v. Chesapeake Bay Seafood House Assoc., LLC*, No. JFM-16-01277 (D. Md.); *Stokes v. Consolidated Wings Investment, LLC*, No. 1:15-cv-01932-RLY-DKL (S.D. Ind.); *Roy v. JK&T Wings, Inc.*, No. 4:16-cv-10836-TSH (D. Mass.); *Knox v. The Jones Group*, No. 15-cv-1738 SEB-TAB (S.D. Ind.); *Ide v. Neighborhood Rest. Partners, LLC*, No. 1:13-cv-00509-MHC (N.D.Ga.); *Robbins v. Blazin Wings, Inc.*, No. 15-06340 (W.D.N.Y.); *Grosscup v. KPW Mgmt., Inc.*, No. 16-cv-6501 (N.D. Ill.); *Soto v. Wings R' Us Romeoville, Inc.*, No. 15-cv-10127 (N.D. Ill.); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16-cv-3958 (N.D. Ill.); *Johnson v. Pinstripes, Inc.*, No. 12 C 1018 (N.D. Ill.); *Cureless v. Great Am. Real Food Fast, Inc.*, No. 3:10–cv–00279–JPG–SCW (S.D. Ill.); *Clark v. Honey Jam Café, LLC*, No. 11 C 3842 (N.D. Ill.); *Cooper v Winking Lizard, Inc.*, 1:16-cv-01513-DAP (N.D. Ohio).

Here, to date, Plaintiffs' Counsel's total lodestar fees are $189,459.90.  Ex. 3, Werman

Decl. ¶ 23. The following table shows the breakdown of attorneys and paralegals who worked on

this case, the amount of time recorded by each individual, and each individual's hourly rate.

| Timekeeper | Rate | Time | Amt. Due |
|---|---|---|---|
| Douglas M. Werman | $650 | 97.69 | $63,499 |
| Steven P. Schneck | $625 | 5.84 | $3,650 |
| Abra Siegel | $575 | 67.75 | $38,956 |
| Maureen A. Salas | $525 | 25.01 | $13,130 |
| Drew Lagando | $450 | 35.71 | $16,070 |
| Zachary C. Flowerree | $430 | 72.33 | $31,102 |
| Sarah J. Arendt | $400 | 0.33 | $132 |
| Jacqueline Villanueva | $175 | 21.64 | $3,787 |
| Adriana Rodriguez | $175 | 13.82 | $2,419 |
| Cristina Calderon | $175 | 39.01 | $7,089 |
| Maria Reyes | $175 | 25.48 | $4,459 |
| Othon Nunez | $175 | 5.84 | $1,022 |
| Julietta Galvan | $175 | 23.69 | $4,146 |
| **Total** | | | **$189,459.90** |

*Id.* at 25. Counsel's requested fee is $166,666.66 and represents only 87.9% of their actual

lodestar. *Id.*at 24.  Plaintiffs' Counsel's lodestar does not take into consideration future time

Plaintiffs' Counsel will spend fulfilling their obligations in the Settlement Agreement,

administration of the Settlement, and responding to Plaintiffs' and Settlement Class members'

inquiries. *Id.*at 26.

### 3.    Fee Arrangement

Plaintiffs' Counsel undertook the representation on a purely contingent basis.  Thus,

Counsel has borne all of the risk that accompanies contingent-fee representation, including the

prospect—very real in this case, considering upcoming dispositive motion practice and

decertification motion practice—that the investment of substantial attorney time and resources

would be lost.  Counsel should be compensated for this risk.  *Lonardo v. Travelers Indem. Co.,*

706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan,* 262 F.

17

Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank,* 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

### 4. Societal Interest

The FLSA is a remedial statute designed to protect the wages of workers, *see A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493 (1945), and "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC,* 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011). Plaintiffs' counsel took on this matter to protect the rights of tipped employees and litigated for nearly two years against experienced defense counsel. This factor supports awarding the requested fees and will encourage other qualified plaintiffs' attorneys to take on the risks of contingency litigation to help workers who cannot pay their hourly fees.

### 5. Case Complexity and Risk

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 WL 3447947, at *7, *citing Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013). The parties faced complex motion practice, both over the merits, as well as on final certification or de-certification of the collective.

### 6. Skill and Reputation of Counsel

All Counsel are highly qualified and experienced, and each have substantial credentials in federal courts and class and collective action litigation. Ex. 3, Werman Decl. ¶ 27; see also f.n. 7, supra; *Knox,* 2017 WL 3834929, at *4; *Sanchez,* 2017 WL 1425837, at *5-7; *Mouloki,* 2017 WL 2791215, at * 3, n. 4; *Schmidt,* 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Castillo, J.).

18

And while not listed in the six factors above, another factor supporting Plaintiffs' Counsel's request for one-third of the common fund is that each Plaintiff agreed to pay Plaintiffs' Counsel that amount when they opted into this case. *See*, *e.g.*, ECF No. 054-1, Consents to Join ("I agree to provide the Firms one-third (33 1/3%) of any recovery they obtain on my behalf in the lawsuit or the reasonable hourly value of their legal services for the time expended in the Lawsuit, as paid by Defendants, whichever is greater.").

For the foregoing reasons, Plaintiffs' Counsel's requested attorney's fees of $166,666.66 should be approved.

### B.    Plaintiffs' Litigation Costs Should Be Approved

Through date, Plaintiffs' counsel costs are $10,128.26. Ex. 3, Werman Decl. ¶ 39. The expenses are "of the type routinely charged to ... hourly fee-paying clients," and qualify for reimbursement out of the common fund settlement.  *See In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 535 (E.D. Mich. 2003).  The expenses are detailed by category in Counsel's Declaration, and invoices or receipts can be produced upon request.  The expenses incurred are reasonable and their reimbursement should be approved.  *Id.*  Accordingly, the requested award of $10,128.26 in litigation costs should be approved.

### C.    The Court Should Appoint a Settlement Administrator and Approve its Fee

The Court should appoint Rust LLC as the settlement administrator and approve $6,000.00 in fees for its work in administering the settlement.

## IX.    CONCLUSION

For the foregoing reasons, the Court should approve the Settlement Agreement.

19

Dated: April 6, 2018

Respectfully submitted,

s/Douglas M. Werman
One of the Attorneys for Plaintiff and Collective
Action Members

## **PROOF OF SERVICE**

A copy of this document was served by the Court's ECF System on counsel of record on

April 6, 2018 pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Signed by,

s/Douglas M. Werman

20